Jose PERALTA, Plaintiff–Appellant,

v.

Sandra VASQUEZ, Robert A. Jones, Donald Selsky, Defendants– Appellees,

Anita R. Florio, Guy James Mangano, Martin H. Brownstein, James Edward Pelzer, Defendants.

Docket No. 04–2822–PR.

United States Court of Appeals, Second Circuit.

Submitted: June 19, 2006.

Decided: Oct. 17, 2006.

Jose Peralta, Pro Se, Gouverneur, N.Y.

Carol Fisher, Assistant Solicitor General for Eliot Spitzer, Attorney General of the State of New York (Michael S. Belohlavek, Senior Counsel, Department of Appeals & Opinions, of counsel), New York, N.Y., for Defendants–Appellees.

Before MINER, CALABRESI, Circuit Judges, HOLWELL, District Judge.*

CALABRESI, Circuit Judge.

This appeal presents a new twist on a familiar issue: What requirements must a

* The Honorable Richard J. Holwell, of the United States District Court for the Southern District of New York, sitting by designation.

prisoner meet before he can maintain a claim under 42 U.S.C. § 1983 that challenges sanctions imposed pursuant to a prison disciplinary proceeding? The case law is clear that when a prisoner's challenge either to the process or the result of a prison disciplinary proceeding necessarily implies the invalidity of a sanction that affects the duration of his sentence, such as the deprivation of good-time credits, the prisoner may not maintain an action under § 1983 unless he has shown that the sanction (or the procedures that led to it, if the procedural defect at issue was critical to the imposition of the sanction) have been overturned through administrative channels or by a state or federal court. It is also clear that when a prisoner's challenge involves a sanction that affects only his conditions of confinement, this "favorable termination" requirement does not apply and a prisoner may maintain an action under § 1983 without showing that the sanction (or the procedures that led to it) have been previously invalidated.

What is not clear, however, is whether a prisoner who was subject to a single disciplinary proceeding that gave rise to two types of sanctions—one that affected the duration of his custody and the other that affected the conditions of his confinement—can, without needing to satisfy the favorable termination rule, maintain a § 1983 action aimed solely at the second type of sanction. We now resolve this open question and hold that, in "mixed sanctions" cases, a prisoner can, without demonstrating that the challenged disciplinary proceedings or resulting punishments have been invalidated, proceed separately with a § 1983 action aimed at the sanctions or procedures that affected the conditions of his confinement. But we also hold that he may only bring such an action if he agrees to abandon forever any and all claims he has with respect to the sanctions that affected the length of his imprisonment.

## FACTS

On May 16, 1998, Jose Peralta, an inmate in the custody of New York State's Department of Correctional Services ("DOCS"), was accused of cutting another inmate several times with a "razor-type weapon." A disciplinary hearing was scheduled to adjudicate the matter. Defendant Sandra Vasquez, a corrections counselor with DOCS, was assigned to assist the appellant in the hearing. Defendant Brian Jones, the assistant superintendent at Fishkill Correctional Facility, where Peralta was being detained at the time of the incident, conducted the hearing on June 12, 1998. Jones found Peralta guilty and imposed a penalty of five years of confinement in the Special Housing Unit ("SHU"), five years loss of packages, commissary, and telephone privileges, and five years loss of good-time credits. The appellant appealed to Donald Selsky, the director of special housing/inmate disciplinary programs, who modified the penalty to twenty-four months of SHU confinement and a twenty-four month loss of packages, commissary, and telephone privileges, in addition to a twenty-four month loss of good-time credits.

Having exhausted his appeals within the prison, Peralta filed an Article 78 petition challenging the decision in New York Supreme Court, see N.Y. C.P.L.R. § 7801 (Consol.2006), which transferred the case to the Appellate Division, Second Department. A judge of the Appellate Division granted Peralta "leave to file as a poor person" but declined to waive the filing fee. When Peralta failed to pay the filing fee, which he stated he could not afford, his case was dismissed. His appeal to the New York Court of Appeals of the decision dismissing his case was denied.

Peralta, proceeding pro se, then filed the instant action under 42 U.S.C. § 1983, alleging that the disciplinary hearing violated his constitutional rights. In his amended complaint, filed at the direction of the district court (Mukasey, *J.*), Peralta claimed that defendants Vasquez, Jones, and Selsky denied him "adequate assistance, witnesses, and a fair and impartial hearing officer" and, in doing so, deprived him of substantive and procedural due process and protection against cruel and unusual punishment in violation of the Fourteenth and Eighth Amendments.[1] These defendants moved to dismiss the case on the ground that Peralta could not prevail on his § 1983 claim without first establishing that the disciplinary hearing or the resulting sanctions had been invalidated in a state or federal proceeding, and that this had not occurred. In response, Peralta argued that, because he sought damages only for those sanctions affecting his conditions of confinement and not for the loss of his good-time credits, he could maintain his claim despite not having demonstrated that the sanctions or hearing had been invalidated.[2]

The district court (Jones, *J.*)[3] granted the defendants' motion. The district court acknowledged that, unlike many cases in which a prisoner challenges the result of prison disciplinary hearings through a § 1983 action, the plaintiff here sought damages only for his confinement in

SHU—and not for the loss of good-time credits. It also noted that neither the Supreme Court nor this Court had "addressed the issue of whether a prisoner may proceed separately with his § 1983 claim as to those portions of his sentence which affected only the conditions of his confinement." Nevertheless, it found "that allowing a plaintiff to 'split' his claims under the circumstances in this action would be ill-advised." It therefore held that a prisoner-plaintiff who challenges only the conditions of confinement imposed pursuant to a disciplinary proceeding that also resulted in the loss of good-time credits must, like a plaintiff who challenges both types of sanctions, demonstrate that those sanctions or the disciplinary hearings giving rise to them have been invalidated before he can proceed with any § 1983 claim.[4]

## DISCUSSION

### I.

■ We review the district court's dismissal of the complaint de novo, and accept all material factual allegations therein as true. *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir.2005).

### II.

This case implicates the overlap between 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254. The in-

---

1. Peralta also alleged in his amended complaint that judges and clerks of the Appellate Division, Second Department violated his constitutional rights. The district court dismissed the complaint against these defendants because they were immune. Peralta does not appeal this portion of the judgment.

2. He also argued that he was entitled to pursue his claim under § 1983 because he was not able to challenge the defendants' actions through a petition for habeas corpus.

3. The case was reassigned to Judge Barbara Jones on April 16, 2003.

4. The district court also held that this Court's cases allowing a plaintiff to maintain an action under § 1983 when habeas relief is no longer available did not apply here because "[p]laintiff' s inability to pursue a habeas remedy is due to his own failure to properly pursue his state challenge to the disciplinary proceeding." Peralta does not challenge this portion of the judgment.

tersection of these two statutes, and the prerequisites for bringing a claim under each of them, has given rise to a series of cases in the Supreme Court and in this Court examining when a prisoner challenging the imposition of various types of punishment, and seeking different remedies, may rely on § 1983 to pursue relief.

In the initial case, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court established that habeas is the exclusive remedy for a state prisoner seeking an earlier release. There, state prisoners who had been deprived of good-time credits as a result of internal disciplinary proceedings brought an action under § 1983. They sought injunctive relief to compel the prison to restore those credits, and, as a result, gain them immediate release. *Id.* at 476, 93 S.Ct. 1827. The Court held that the prisoners could not maintain their action under § 1983 because when a prisoner is challenging "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. 1827. Conversely, *Preiser* concluded that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499, 93 S.Ct. 1827.

Over twenty years later, in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court considered when a prisoner, who sought money damages but not an earlier release for an allegedly unconstitutional conviction, could pursue a claim under § 1983. The prisoner-plaintiff in that case claimed that the county prosecutor and state police investigator had obtained his criminal conviction by engaging in unlawful acts. *Id.* at 478–79, 114 S.Ct. 2364. The Court held that Heck's § 1983 action was not cognizable because although on its face it sought only monetary damages, "the basis for the damages claim necessarily demonstrates the invalidity of the conviction. In that situation, [Heck] *can* be said to be 'attacking ... the fact or length of ... confinement,'...." *Id.* at 481–82, 114 S.Ct. 2364 (quoting *Preiser*, 411 U.S. at 490, 93 S.Ct. 1827) (alteration in original). Accordingly, it adopted what is known as the "favorable termination rule":

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.... Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486–87, 93 S.Ct. 1827 (internal citations omitted).

In a subsequent case, *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Court made clear that *Heck's* favorable termination rule applies to challenges made under § 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits. In *Edwards*, the prisoner-plaintiff was found guilty of breaking prison rules at a hearing and sentenced to a mixed sanction of 10 days in isolation, 20 days in segregation, and the loss of 30 days of good-time credits. *Id.* at 643, 117 S.Ct. 1584. He then filed a § 1983 action that sought (1) a declaration that the procedures used in the disciplinary proceeding violated his Fourteenth Amendment due process rights, (2) damages for the allegedly unconstitutional procedures, and (3) an injunction to prevent future violations. In challenging only the procedures employed, the prisoner did not request the restoration of good-time credits or damages for the imposition of the sanctions affecting the conditions of his confinement. *Id.* at 644, 117 S.Ct. 1584.

The Court rejected the prisoner's argument that a distinction should be made between challenges to the procedures used in a disciplinary proceeding and challenges to the results of such a proceeding. It held that although the prisoner did not request that his good-time credits be restored, the claimed procedural defect (bias of the hearing officer), if established, would necessarily imply the invalidity of that punishment. A favorable outcome therefore would affect the length of his sentence, and, as a result, the prisoner's action was subject to *Heck's* favorable termination rule. *Id.* at 648, 117 S.Ct. 1584.

The Court, however, "did not address whether the prisoner [subject to mixed sanctions] could proceed separately with his § 1983 claim as to those portions of his sentence which affected only the conditions of his confinement." *Jenkins v. Haubert*, 179 F.3d 19, 25 (2d Cir.1999) (citing *Edwards*, 520 U.S. at 648, 117 S.Ct. 1584).

These cases, therefore, left open two questions: (a) whether *Heck's* favorable termination requirement applies to a § 1983 claim aimed at prison disciplinary proceedings that resulted only in sanctions which have no effect on the duration of confinement, and (b) if *Heck* does not, whether, where disciplinary proceedings result in sanctions that affect both the conditions of confinement as well as its duration, a prisoner can proceed separately with a § 1983 claim with respect to the parts of his punishment affecting only conditions of confinement.

In *Jenkins v. Haubert* we answered the first of these, concluding that *Heck* does not preclude a § 1983 claim aimed at sanctions that did not affect length of confinement. 179 F.3d at 21.[5] The prisoner-plaintiff in *Jenkins* was subject to two disciplinary hearings, each of which resulted in the sanction of thirty days in "keeplock."[6] *Id.* at 20–21. He alleged that the manner in which the proceeding he challenged was conducted violated his due process rights. In analyzing whether the prisoner's claim was cognizable under § 1983 despite his failure to demonstrate that the proceeding had been invalidated, we noted that "the Court has never announced that the *Heck* rule bars a prisoner's challenge under § 1983 to an adminis-

---

**5.** In doing so, we applied the dicta, to the same effect, in *Preiser*. *See Preiser*, 411 U.S. at 499, 93 S.Ct. 1827.

**6.** Keeplock is "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Jenkins*, 179 F.3d at 21 (internal citations and quotation marks omitted).

trative or disciplinary sanction that does not affect the overall length of his confinement." *Id.* at 27. We held that because the prisoner's "suit is properly characterized as a challenge to the conditions of his confinement, rather than as a challenge to the fact or duration of his confinement, *Heck's* favorable termination requirement does not apply." *Id.* The Supreme Court subsequently adopted the same reasoning in *Muhammad v. Close,* 540 U.S. 749, 754, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (per curiam) (holding that *Heck's* favorable termination requirement does not apply to § 1983 actions challenging "prison disciplinary proceedings in the absence of any implication going to the fact or duration of [the] underlying sentence").

■ We conclude from all this that the purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition. But the favorable termination requirement is *not* intended to compel a prisoner to demonstrate that a sanction he seeks to challenge, or the procedure that led to it, has been invalidated before he can proceed under § 1983 when that sanction does not affect his term of confinement. As the *Muhammad* Court explained, "*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not ... implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence. There is no need to preserve the habeas exhaustion rule and no impediment under

*Heck* in such a case...." *Muhammad,* 540 U.S. at 751–52, 124 S.Ct. 1303.

With that in mind, we turn to the merits of the second question posed above, whether and under what circumstances a prisoner may employ § 1983 in a mixed sanctions case to challenge the conditions rather than the terms of his confinement.

### III.

■ Peralta seeks damages for the sanctions imposed on him which affected only the conditions of his confinement and, on that basis, he argues that his § 1983 action is cognizable, despite the fact that he has not demonstrated that the disciplinary hearing that gave rise to the alleged constitutional violation was overturned in a habeas or analogous proceeding. Whether a prisoner who was subject to a single disciplinary proceeding that gave rise to sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement may, without satisfying the favorable termination requirement, maintain a § 1983 action aimed solely at the latter sanctions is an open question in the circuit. We today hold that a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.* In other words, the prisoner must abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in his current § 1983 suit.

Both Supreme Court and circuit precedents clearly hold that a prisoner subject to a disciplinary proceeding that gives rise to sanctions that affect only the conditions

of his confinement, and not the duration of his imprisonment, may maintain an action under § 1983 challenging those sanctions (or the procedures by which they were imposed) without satisfying *Heck's* favorable termination requirement. *Muhammad,* 540 U.S. at 754, 124 S.Ct. 1303; *Jenkins,* 179 F.3d at 27. Why then preclude a § 1983 action undertaken by a prisoner who was subject to a single disciplinary proceeding that gave rise to mixed sanctions but who seeks to challenge only those sanctions that affect the conditions of his confinement? The most—perhaps the only—plausible reason is that, if the prisoner prevails in his § 1983, conditions of confinement, action, he may, in a subsequent federal habeas petition or action brought in a state court challenging the duration of his confinement, seek to estop the state, collaterally, from defending the sanctions affecting length of imprisonment. Were that to happen, the validity of the duration of confinement would, in clear violation of *Heck,* have been decided in a § 1983 action.

If such a prisoner, however, as a prerequisite for maintaining his § 1983 action, both agrees to and can successfully abandon once and for all the duration claim, then his success in the § 1983 action would have *no* effect on the sanctions that relate to the length of time he served in prison, and the concern animating the *Heck* favorable termination rule would simply not be implicated.[7]

■ Can we be sure that a prisoner's commitment to abandon any claim he has with respect to the sanctions that affect the duration of his confinement will be

enforced in later proceedings? The doctrine of judicial estoppel provides us with that certainty. Judicial estoppel ensures, inter alia, that "abandonment of a claim to obtain a litigation advantage precludes the later reassertion of that claim." *United States v. Levasseur,* 846 F.2d 786, 799 (1st Cir.1988). In order for judicial estoppel to be invoked, (1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter. *Bates v. Long Island R.R.,* 997 F.2d 1028, 1038 (2d Cir.1993); *see also Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999).

Both elements of judicial estoppel would readily be satisfied should a prisoner—who was subject to mixed sanctions and who, having agreed to abandon forever his duration claim, was allowed to proceed separately with his conditions of confinement claim under § 1983—subsequently, and in a separate proceeding, attempt to use the outcome of the § 1983 action to estop collaterally the state from defending the sanctions affecting length of his confinement.

Such a prisoner would manifestly have adopted, and proffered to the court, inconsistent positions in two separate proceedings. Moreover, under the rule articulated here, the court would only have allowed the prisoner to maintain his § 1983 action in the initial proceeding *because* the prisoner had agreed to forswear his claims related to the duration sanctions. As a result, the reliance requirement of judicial

---

7. Allowing a party to abandon a claim that would otherwise prevent him from moving forward in federal court with the remainder of his action is not novel. Courts regularly permit a habeas petitioner who has a "mixed petition"—that is, one that involves both exhausted and unexhausted claims—to abandon his unexhausted claims so that he may proceed with his exhausted claims. *See Zarvela v. Artuz,* 254 F.3d 374, 378 (2d Cir.2001) (citing *Rose v. Lundy,* 455 U.S. 509, 519–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); *see also McKethan v. Mantello,* 292 F.3d 119, 122 (2d Cir.2002).

estoppel would certainly be met. In other words, at the time of the second proceeding, a prisoner who tried to renege on his abandonment of any duration suit would necessarily have satisfied both elements of judicial estoppel, and he would, therefore, be precluded from reasserting his previously abandoned challenge.

Given the efficacy and applicability of judicial estoppel, a prisoner who, on bringing a § 1983 suit challenging conditions of confinement, abandons any duration of imprisonment claims arising out of the same disciplinary process, is, substantively, in the precise condition of the prisoners who in *Muhammad* and *Jenkins* were allowed to bring § 1983 actions. His only surviving claim would be a § 1983 cognizable (conditions of confinement) suit. And the survival of that suit does not in any way implicate the concerns animating *Heck* and *Edwards;* the favorable termination rule, therefore, does not apply. *Cf. Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (noting that "the Supreme Court recently clarified [in *Muhammad* ] that a § 1983 action challenging the validity of a disciplinary sanction that does not affect the overall length of the prisoner's confinement may be brought regardless of whether the sanction was overturned"); *Jenkins,* 179 F.3d

at 27. Accordingly, this type of § 1983 claim may proceed even if the prisoner-plaintiff has not shown that the sanctions or the procedures that led to them have been overturned through administrative channels or by a state or federal court.[8]

## CONCLUSION

The judgment of the district court is VACATED and REMANDED. On remand, the district court is to ascertain whether Peralta has formally agreed, or is then willing, to waive all his potential claims with respect to the sanctions affecting the duration of his imprisonment arising out of the proceeding he is currently challenging. If such a waiver results, the district court must allow Peralta to proceed separately with his challenge under § 1983 to the sanctions affecting the conditions of his confinement.[9]

---

8. Not only does consistency with prior holdings require this result, but so also does the avoidance of unfortunate incentives. Were we to hold otherwise, we would give an undesirable incentive to prison officials, allowing them to place severe and unnecessary roadblocks in the way of prisoners who wish to challenge conditions of confinement. It is understandably difficult for a prisoner to prove "favorable termination" with respect to prison disciplinary proceedings. Accordingly, the rule advanced by the defendants, which, absent favorable termination, would ban a § 1983 action whenever a disciplinary proceeding resulted in the extension of confinement as well as a change in confinement conditions, would create the incentive to include as part of every instance of prisoner punishment a sanction that affected the duration of the prisoner's sentence—even if it would just be the loss of one day's worth of good-time credit. We do not believe that such an incentive furthers the twin goals of avoiding frivolous suits challenging conditions of confinement, while permitting potentially valid ones.

9. Before the district court considers the merits of that claim, however, it must permit the defendants to assert any of several affirmative defenses that could result in the dismissal of the plaintiff's claim, defenses which the defendants, for various reasons, may not have deemed necessary to proffer earlier. *See Jenkins,* 179 F.3d at 28–29.